1  Robert R. Powell (SBN: 159747)
2  Powell & Associates
   925 W. Hedding St.
3  San Jose, CA 95126
   Phone: (408) 553-0201
4  Fax: (408) 553-0203
   Email: rpowell@rrpassociates.com

5  Samuel H. Park (SBN: 261136)
6  Attorney at Law
   148 Pacific Ave., #2
7  Pacific Grove, CA 93950
   Phone: (831) 529-5955
8  Email: sam@sampark.lawyer

9  Attorneys for Plaintiffs,
   FAUN O'NEEL, B.T., A.O, D.O., and A.T.

10

11              **UNITED STATES DISTRICT COURT**

12             **EASTERN DISTRICT OF CALIFORNIA**

13

14  FAUN O'NEEL, individually and as        Case No.
    Guardian Ad Litem for her children
15  B.T., A.O., D.O., and A.T.              **COMPLAINT FOR CIVIL
                                           RIGHTS VIOLATION**
16              Plaintiffs,
                                           [JURY TRIAL DEMANDED]
17        v.

18  CITY OF FOLSOM, a public entity;
    SPENSER HEICHLINGER, an
19  individual; MELANIE CATANIO, an
    individual; LOU WRIGHT, an
20  individual; [FNU] AUSTIN, an
    individual; [FNU] HUSAR, an
21  individual; DOE CITY OF FOLSOM
    DEFENDANTS, individuals;
22  COUNTY OF SACRAMENTO, a
    public entity; DOE DCFAS
23  DEFENDANTS, individuals; and
    DOES 1 through 10, inclusive,
24
                Defendants.
25

26                  **PARTIES**

27        1.     Plaintiff FAUN O'NEEL ("Faun" or "Plaintiff") is an individual

28  residing in the County of Sacramento. Faun is the mother of minor Plaintiffs,

- 1 -

B.T., A.O., D.O., and A.T. (The true names of the minors are replaced with the initials to protect their privacy.)

2. At or near the time of the filing of this Complaint Faun O'Neel has or will file a request for appointment as Guardian Ad Litem for her minor children B.T., A.O., D.O., and A.T.

3. Plaintiff B.T. is and was at all times relevant an individual residing in the County of Sacramento, California. B.T. is Faun's daughter. At the time of the events alleged herein, B.T. was fourteen (14) years old.

4. Plaintiff A.O. is and was at all times relevant an individual residing in the County of Sacramento, California. A.O. is Faun's daughter. At the time of the events alleged herein, A.O. was fourteen (14) years old.

5. Plaintiff D.O. is and was at all times relevant an individual residing in the County of Sacramento, California. D.O. is Faun's son. At the time of the events alleged herein, D.O. was twelve (12) years old.

6. Plaintiff A.T. is and was at all times relevant an individual residing in the County of Sacramento, California. A.T. is Faun's daughter. At the time of the events alleged herein, A.T. was ten (10) years old.

7. Defendant CITY OF FOLSOM ("CITY") is a public entity. The Folsom Police Department is an administrative subdivision of CITY, responsible for enforcement of the law within the territorial jurisdiction of the CITY.

8. Defendant SPENSER HEICHLINGER ("HEICHLINGER") is an individual who on information and belief was at all times relevant a resident of the County of Sacramento and an officer, agent, and/or employee of CITY, working as a police officer for the Folsom Police Department. HEICHLINGER is sued in his individual capacity as an employee of CITY.

9. Defendant [FNU] AUSTIN ("AUSTIN") is an individual who, on information and belief, was at all times relevant a resident of the County of

Sacramento and an officer, agent, and/or employee of CITY, working as a police officer for the Folsom Police Department. Plaintiff is ignorant of the first name of AUSTIN. Plaintiff reserves the right to amend this complaint at such time as AUSTIN'S full name is determined.

10.     Defendant [FNU] HUSAR ("HUSAR") is an individual who, on information and belief, was at all times relevant a resident of the County of Sacramento and an officer, agent, and/or employee of CITY, working as a police officer for the Folsom Police Department. Plaintiff is ignorant of the first name of HUSAR. Plaintiff reserves the right to amend this complaint at such time as HUSAR'S full name is determined.

11.     Defendant MELANIE CATANIO ("CATANIO") is an individual who on information and belief was at all times relevant a resident of the County of Sacramento and an officer, agent, and/or employee of CITY, working as a police officer for the Folsom Police Department. CATANIO is sued in her individual capacity as an employee of CITY.

12.     Defendant LOU WRIGHT ("WRIGHT") is an individual who on information and belief was at all times relevant a resident of the County of Sacramento and an officer, agent, and/or employee of CITY, working as a police officer for the Folsom Police Department. WRIGHT is sued in his individual capacity as an employee of CITY.

13.     Defendants DOE CITY DEFENDANTS are individuals who on information and belief were at all times relevant residents of the County of Sacramento and officers, agents, and/or employees of CITY, working as police officers for the Folsom Police Department. Each of the DOE CITY DEFENDANTS are sued in their individual capacity as an employee of CITY. Plaintiffs are ignorant of the names of the DOE CITY DEFENDANTS. Plaintiffs reserve the right to amend this complaint at such time as the identities of these defendants are ascertained.

COMPLAINT FOR CIVIL RIGHTS VIOLATION

14.     Defendant COUNTY OF SACRAMENTO ("COUNTY") is a public entity. The Department of Child, Family and Adult Services ("DCFAS") is administrative subdivision of COUNTY responsible for discharging the COUNTY's child welfare programs and delivering Child Welfare Services to residents within the territorial jurisdiction of the COUNTY.

15.     Defendants DOE COUNTY DEFENDANTS were at all times relevant individuals residing in the County of Sacramento and officers, agents, and/or employees of DCFAS. Plaintiffs are ignorant of the true names of the DOE COUNTY DEFENDANTS. Plaintiffs reserve the right to amend this complaint at such time as the true identities of said defendants are discovered.

16.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff at the present time. Plaintiff therefore sues said Defendants by such fictitious names and will seek leave of Court to amend this Complaint to set forth the true names and capacities thereof, when the same has been ascertained.

17.     Defendants, and each of them, were and are the agents, servants, representatives, and/or employees of each of the other Defendants, herein, and were at all times acting within the course and scope of such agency, representation and employment and with the permission and consent of each of said Defendants.

18.     Plaintiffs are informed and believe, and upon such information and belief allege, that each of the Defendants, including DOES 1 through 10, inclusive, were at all times herein mentioned, acting in concert with, and in conspiracy with, each and every one of the remaining Defendants in doing the things alleged in this Complaint.

19.     Wherever appearing in this Complaint, each and every reference to Defendants, and to any of them, is intended to be and shall be a reference to all

Defendants hereto, and to each of them, named and unnamed, including all fictitiously named Defendants, unless said reference is otherwise specifically qualified.

## JURISDICTION

20.    Pursuant to 28 U.S.C. sections 1331, 1343(a)(3) and 1343(a)(4), the Court has original jurisdiction over the claims alleged herein arising under the Fourth, and Fourteenth Amendments to the United States Constitution.

21.    Pursuant to 28 U.S.C. section 1367(a), the Court also has supplemental jurisdiction over the remaining state law claims, which are so related to the vindication of constitutional rights that they form the same case or controversy.

22.    Plaintiff, Faun O'Neel, seeks to vindicate her liberty interest in the companionship, care, custody, and management of her children. Faun and her children, B.T., A.O, D.O, and A.T. have the constitutional right to live together without governmental interference. All Plaintiffs seek to vindicate their guaranteed right, under the Fourth, and Fourteenth Amendments to the United States Constitution, to not be separated without due process of law except in emergencies.

## VENUE

23.    Venue is proper in this judicial district because all Defendants are residents of California and the events or omissions giving rise to Plaintiffs' claims occurred in the County of Sacramento, State of California.

## COMMON FACTS

24.    Faun is the biological mother of daughters, B.T. and A.T. and the adoptive mother of A.O and D.O. Over the years, Faun fostered more than 20 children in her home, from newborns through age 12. She once garnered recognition as "foster parent of the year."

25.     Faun fostered A.O. and D.O. for approximately 18 months, before she fell in love with them and formally adopted the children on December 21, 2011. A.O and D.O. are biological half-siblings.

26.     In 2013, Faun married Danny O'Neel ("Danny"), a U.S. Army Veteran. Danny became step-father to all four children. At all times relevant to this Complaint, Faun, Danny, B.T., A.O., D.O, and A.T., formed a family unit, entitled to all the protection afforded under the United States Constitution and the laws of the State of California.

27.     Faun and Danny have always loved and nurtured their children. They also take their duty to raise conscientious, responsible, and civic minded children seriously. Each year, the O'Neel family adopts a family for Christmas, serves meals for the underprivileged on Thanksgiving, volunteer for suicide prevention services, and a variety of other projects designed to assist veterans and first responders. Faun, herself, is the Executive Director of Warfighter Overwatch, a non-profit geared towards assisting veterans of the United States Armed Services, and has been a fellow of the Elizabeth Dole Foundation since 2015.

28.     B.T., A.O., D.O., and A.T. have thrived under Faun and Danny's care. Both B.T. and A.O. are members of a High School cheerleading team that Faun coaches. D.O. enjoys playing golf and running cross country. Their youngest child, A.T., was born at just 23 weeks and already has had two open heart surgeries. Despite this initial rough start, the child is also flourishing.

29.     On December 20, 2020, the O'Neel family was relaxing at home in the lead up to Christmas. Faun and the children were enjoying one of their family traditions, which was to bake and decorate Christmas cookies.

30.     That evening, the family had dinner plans to celebrate the birthday of Travis Miller ("Uncle Travis"), a fellow veteran who lived in the O'Neel family home.

COMPLAINT FOR CIVIL RIGHTS VIOLATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

31.     Prior to leaving for dinner, Faun asked D.O. to put away the Christmas cookies so that the family dog, Liberty, would not get to them while the family was away at the restaurant. D.O. had extra chores that week because he had been caught plagiarizing a school assignment the week prior and caused a number of class disruptions.

32.     When the family returned home, Faun discovered that the cookies had not been put away as requested. The dog had eaten most of the cookies and created a mess in the kitchen.

33.     Faun called D.O. to clean up the mess in the kitchen, which now included D.O.'s leftovers from the restaurant that spilled out from the refrigerator due to the haphazard way that D.O. stored the food. Faun marched D.O. to the kitchen to show him the mess he created. After D.O. cleaned the kitchen, Faun sent him straight to his bedroom as a form of discipline.

34.     At approximately 9:00 p.m., a loud banging was heard at the front door of the family's home. When Danny opened the door, he was met by HEICHLINGER, AUSTIN, and HUSAR.

35.     HEICHLINGER, AUSTIN, and HUSAR informed Danny that a 911 call had been made and that the officers were there to carry out a welfare check on the children. The child B.T. had apparently called the 911 hotline to ask whether grabbing a child by the neck was child abuse. Unbeknownst to Faun and Danny, D.O. had gone to B.T.'s room after cleaning the kitchen and lied that Faun picked him by the neck and carried him to the kitchen.

36.     HEICHLINGER, AUSTIN, and HUSAR entered the home without Faun or Danny's consent and without a warrant. When Danny protested, the police officers became hostile and told Danny that he needed to "sit down and behave."

37.     The police officers ordered Danny and Faun to wake the children up so that they could be interviewed. Each of the children were interviewed by

the police officers outside of the presence of Danny and Faun. After concluding the interviews, the police officers took several photographs of D.O. There were no marks or bruises on D.O.

38.    After interviewing the children and Faun, the officers left the home. They did not interview the other residents of the home, including Uncle Travis and Travis's father who was visiting from out of state and also in the home.

39.    None of the officers presented any paperwork, contact information, or other resources regarding what might happen next.

40.    Plaintiffs are informed and believe and thereon allege that, on December 21, 2020, an unknown officer, or multiple officers with CITY, contacted Sacramento County DCFAS to file a report of suspected child abuse.

41.     On further information and belief, Plaintiffs allege that said CITY DEFENDANT(S), defined at this point as Doe's 1 – 5, and unknown COUNTY DEFENDANTS, defined at this point as Doe's 6 – 10, agreed jointly and with full participation of all aforesaid Doe Defendants, to seize B.T., A.O., D.O., and A.T. from the care and custody of Faun without seeking court authorization. At the time that the that DOE CITY DEFENDANTS and DOE COUNTY DEFENDANTS decided to seize the children, there was no imminent risk of serious bodily injury to any of the children.

42.    On December 22, 2020, two days after the initial contact, and without either any further investigation or any other incidents involving the children or any measure of harm or potential harm, CATANIO, WRIGHT, and DOE CITY DEFENDANTS 1-4 arrived at Plaintiffs' home. They informed Faun that they were there to seize all of the children and remove them from Faun's custody.

43.    None of the Defendants presented a warrant or court order, authorizing the seizure of B.T., A.O., D.O, and A.T. At the time of the seizure,

1  none of the children were in danger of suffering serious bodily injury or death

2  within the time it would have taken Defendants to obtain a warrant, authorizing

3  the seizure. In fact, Folsom Police officers had responded to the home two days

4  prior and not removed any of the children. Thus, Defendants had ample time to

5  seek a court order authorizing the seizure of the children.

6       44.    As before, CATANIO, WRIGHT, and DOE CITY

7  DEFENDANTS 1-4 entered the home without obtaining Danny or Faun's

8  consent. The officers ordered Faun and Danny to bring the children so that they

9  could be interviewed again.

10      45.    CATANIO verbally abused Faun and Danny and accused Faun of

11  having had her children previously removed due to drug abuse. This assertion

12  was as shocking as it was untrue.

13      46.    Faun had never had any of her children removed from her home

14  for any reason in the past. Plaintiffs are informed and believe and thereon allege

15  that CATANIO intentionally made this knowingly false accusation in order to

16  further terrorize Plaintiffs, or in the alternative, this was false information

17  provided by someone in the employment of COUNTY/DCAFS, defined at this

18  point as Does 6 -10.

19      47.    CATANIO interviewed B.T., A.O, D.O., and A.T., without

20  parental consent and outside of Faun's presence. During the interviews,

21  CATANIO, in an apparent effort to "relate" to the children, told the children

22  about trauma that she and her sibling had purportedly suffered during their own

23  childhood and stated that she was a victim of child abuse.

24      48.    CATANIO did not learn anything new on December 22, that

25  suggested that Faun presented an imminent risk of causing serious bodily injury

26  to the children and having done zero "investigation" between the time CITY

27  Defendants came to Faun's home on December 20th, there could have been no

28  further information remotely constituting an articulable imminent risk of serious

bodily injury to any of the children such that there was insufficient time within which to obtain a warrant or explore lesser intrusive alternatives that did not entirely disrespect and violate the Plaintiffs rights of familial association pursuant to the 14th Amendment.

49.    Following the interview in the home, CATANIO, WRIGHT, and DOE CITY DEFENDANTS, defined at this point as Does 1 – 5 transported all of the children to Folsom Police Department. They provided no explanation why all four children were seized to Faun or Danny. On the way, Defendants stopped to pick up food for the children at Chick-fil-A and continued the interrogation of the children both in the car and at the police station.

50.    Within 20 minutes of the children's arrival at the Folsom Police Department, maternal grandmother, Fara Canutt, arrived to request that the children be placed in her care. Upon seeing their grandmother at the police station, children begged CATANIO for permission to go with their grandmother.

51.    CATANIO refused to let the children even see or speak with their grandmother and denied their request to leave with Fara.

52.    Instead of determining whether it would be safe for the children to be placed with their maternal grandmother, CATANIO, WRIGHT, and DOE CITY DEFENDANTS 1 – 5 subjected Fara to an interrogation regarding Faun's disciplinary practices. When Fara stated that she had not witnessed or heard anything out of the ordinary with regard to the discipline of the children and that none of the children had complained about any abuse or harsh punishment, Defendants refused to allow her to take temporary custody of the children or to even give them a hug. Instead, Defendants decided to place B.T., A.O., D.O., and A.T. in non-relative foster care.

53.    At the time the Defendants placed the four children in foster care, there were no exigent circumstances, i.e. none of the children were in danger of

suffering severe bodily injury or death within the time it would have taken to obtain a warrant. In addition, Defendants had no reasonable basis for refusing to place the children with a ready, willing, and able grandparent of the children instead of in foster care, a much less intrusive option than separating the children from everyone and everything with which they were familiar.

54.   Plaintiffs served a government claim against the City of Folsom and its agents on June 16, 2021. Defendant City of Folsom rejected the claim on or about June 24, 2021.

55.   Plaintiffs also served a government claim against the County of Sacramento and its agents on June 16, 2021. Defendant County of Sacramento did not provide any written notice rejecting the claim, thus Plaintiffs' claim was defacto rejected as a matter of law after 45 days.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF CIVIL RIGHTS – WARRANTLESS SEIZURE OF CHILDREN (42 U.S.C. § 1983)

(By Plaintiffs, Faun O'Neel, B.T., A.O., D.O., and A.T, against Defendants, CATANIO, WRIGHT, HEICHLINGER, AUSTIN, HUSAR, DOE CITY DEFENDANTS, DOE COUNTY DEFENDANTS, and DOES 1 through 10, inclusive)

56.   Plaintiffs incorporate by reference all of the preceding paragraphs as if the same were fully set forth herein.

57.   The right to familial association guaranteed under the Fourteenth Amendment is "clearly established" such that any reasonable law enforcement agent in Defendants' situation would know it is unlawful to remove a child from the care, custody, and control of its parents or to question, threaten, examine, or search a child in the absence of exigent circumstances without first obtaining a warrant to do so.

58.     Moreover, the right to familial association guaranteed under the Fourteenth Amendment to the United States Constitution was so clearly established that any reasonable law enforcement agent, including Defendants, would know that it is unlawful to continue to detain a child from the custody of her parent when that agent knows, or has reason to know, that there is no legal or factual basis for the continued detention.

59.     Likewise, the children's rights to be free from unreasonable seizure was clearly established pursuant to the Fourth Amendment of the United States Constitution, and their rights were violated by their seizure.

60.     Defendants, and each of them, had, at all times relevant herein, an affirmative duty and obligation to recognize and conduct themselves in a manner that confirms, provides for, and does not violate the protections guaranteed Plaintiffs under the United States Constitution, including those under the Fourteenth Amendment, to include without limitation, the protection of parental rights, the right to privacy, family integrity and the right to familial relations.

61.     On December 22, 2020, all of the Plaintiffs procedural due process rights pursuant to the Fourteenth Amendment were violated by the conduct of Defendants, CATANIO, WRIGHT, HEICHLINGER, AUSTIN, HUSAR, DOE CITY DEFENDANTS, DOE COUNTY DEFENDANTS, and DOES 1 through 10, and each of them, all of whom were acting under color of state law when they acted to violate Plaintiffs' civil rights by, but not limited to, removing, detaining, and continuing to B.T., A.O., D.O., and A.T. from the care, custody and control of their mother, Faun O'Neel, without judicial authorization, parental consent, and in the absence of exigent circumstances.

62.     Said Defendants committed these unconstitutional acts without proper justification or authority, without probable cause, and without any specific evidence to suggest that any of the children were in imminent danger of

suffering serious bodily injury or death at the hands of their mother, Faun
O'Neel.

63.     At the time of said detention, Defendants, and each of them, knew
a parent-child relationship existed between Faun O'Neel and her children, B.T.,
A.O., D.O., and A.T, and that Faun was entitled to the companionship, care,
custody, and management of her children free of unwarranted government
interference, and likewise her children were entitled to the companionship and
care of Faun.

64.     Defendants, and each of them, failed to conduct a reasonable
investigation into the facts prior to detaining each of the children and placing
them in foster care.

65.     Defendants thereby violated Plaintiffs' rights under the Fourteenth
Amendment of the United States Constitution.

66.     Each Defendant collaborated, acted, and/or conspired to violate
Plaintiffs' civil rights.

67.     Defendants purposefully failed to seek and/or obtain a warrant,
knowing that insufficient grounds or evidence existed to support such
application and/or, as detailed in Plaintiffs' Third Claim for Relief, below, as a
result of an unconstitutional policy, custom, or practice of never obtaining
warrants prior to seizing children.

68.     As a direct and proximate result of these Defendants' misconduct,
Plaintiffs have suffered, and will continue to suffer, general and special
damages according to proof at trial, including but not limited to, physical and/or
mental anxiety and anguish, among other things. Plaintiffs have also incurred,
and will continue to incur, attorneys' fees, costs and expenses, including those
authorized by 42 U.S.C. section 1988, to an extent and in an amount subject to
proof at trial.

69.     Defendants acted with malice and with the intent to cause injury to Plaintiffs or acted with a willful and conscious disregard of the rights of Plaintiffs in a despicable, vile, and contemptible manner. Plaintiffs are therefore entitled to recover punitive damages from individual, non-entity Defendants, and each of them, as permitted by law and as according to proof at trial, due to the wrongful conduct of defendants as herein alleged and to deter them and others from such conduct in the future.

**<u>SECOND CLAIM FOR RELIEF</u>**

**VIOLATION OF FOURTH AMENDMENT – UNLAWFUL SEARCH (42 U.S.C § 1983)**

(By Plaintiffs, Faun O'Neel, B.T., A.O., D.O., and A.T, against Defendants, CATANIO, WRIGHT, HEICHLINGER, AUSTIN, HUSAR, DOE CITY DEFENDANTS, DOE COUNTY DEFENDANTS, and DOES 1 through 10, inclusive)

70.     Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

71.     In doing the acts complained of herein, Defendants acted under the color of the law to violate each of the Plaintiffs' right to be free from unreasonable searches under the Fourth Amendment to the United States Constitution.

72.     Defendants acted under color of law by unlawfully entering the family home multiple times without a warrant or an exception to the warrant requirement, thereby depriving them of their constitutionally protected rights.

73.     Each Defendant collaborated, acted, and/or conspired to violate Plaintiffs' civil rights.

74.     Defendants purposefully failed to seek and/or obtain a warrant, knowing that insufficient grounds or evidence existed to support such application and/or, as detailed in Plaintiffs' Third Claim for Relief, below, as a

result of an unconstitutional policy, custom, or practice of never obtaining warrants prior to entering homes without consent.

75.     As a direct and proximate result of these Defendants' misconduct, Plaintiffs have suffered, and will continue to suffer, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish, among other things. Plaintiffs have also incurred, and will continue to incur, attorneys' fees, costs and expenses, including those authorized by 42 U.S.C. section 1988, to an extent and in an amount subject to proof at trial.

76.     Defendants acted with malice and with the intent to cause injury to Plaintiffs or acted with a willful and conscious disregard of the rights of Plaintiffs in a despicable, vile, and contemptible manner. Plaintiffs are therefore entitled to recover punitive damages from individual, non-entity Defendants, and each of them, as permitted by law and as according to proof at trial, due to the wrongful conduct of defendants as herein alleged and to deter them and others from such conduct in the future.

### THIRD CLAIM FOR RELIEF
### *MONELL* RELATED CLAIMS

(By Plaintiffs, Faun O'Neel, B.T., A.O., D.O., and A.T, against Defendants, CITY and COUNTY)

77.     Plaintiffs incorporate by reference all of the preceding paragraphs as if the same were fully set forth herein.

78.     CITY, including through its Folsom Police Department entity, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability. (*Monell v. Dept. of Social Services* (1978) 436 U.S. 658.)

79.     COUNTY, including through its DCFAS entity is also a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability.

80.     Defendants, City of Folsom and County of Sacramento, including through their respective agencies, had a duty to Plaintiffs at all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed Plaintiff under the United States Constitution, including those under the Fourth, and Fourteenth Amendments, to include without limitation, the protection of the right to familial relations; the right to privacy; the right not to be defamed or stigmatized; the right to be free from unlawful searches; and the right to procedural due process.

81.     Defendants also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of all their agents, officers, employees and those acting under them, so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiffs in order to avoid causing the injuries and damages alleged herein. Based on the duties charged to City of Folsom and County of Sacramento, including the nature of their work relating to child abuse investigations, Defendants knew or should have known of the obvious need to establish customs, policies, and practices and adequate training required to protect the aforementioned civil rights of parents and their children as were violated as described hereinabove.

82.     Defendants each established and/or followed policies, procedures, customs, and/or practices which policies were the moving force behind the violations of Plaintiffs' constitutional rights, including those under the Fourth and Fourteenth Amendments, by, but not limited to:

a.      The longstanding custom, practice, or policy of separating children from their parents without first having conducted a reasonable investigation;

b.      The longstanding custom, practice, or policy of failing to obtain a protective custody warrant to remove children from parents or caretakers in the absence of exigent circumstances;

c.      The longstanding custom, practice, or policy of seizing all of the children in a home without undertaking a particularized or reasonable investigation regarding whether each child should be removed in order to avert serious bodily injury, i.e. a "take one, take all" policy;

d.      The longstanding custom, practice, or policy of failing to undertake lesser intrusive alternative means of ensuring child safety short of removal from the home;

e.      By acting with deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to the investigation of child abuse.

(This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiffs may seek leave to amend this pleading as more information becomes available.)

83.     Defendants, and each of them, breached their duties and obligations to Plaintiffs by, but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by deliberately permitting its agents to engage in the unlawful and unconstitutional conduct as herein alleged with a total indifference to the rights of affected parents, including Plaintiffs herein.

COMPLAINT FOR CIVIL RIGHTS VIOLATION

84.     Defendants, and each of them, knew or should have known that by breaching the above-mentioned duties and obligations, it was reasonably foreseeable that said unconstitutional policies, practices, customs, and usages would cause Plaintiffs to be injured and damaged by County of Sacramento's wrongful policies, or deliberate lack thereof or deliberate indifference to the need for such policies and/or training.

85.     These actions, and/or inactions, of Defendants are the moving force behind, and the direct and proximate cause of Plaintiffs' injuries, as alleged herein. As a result, Plaintiffs have sustained general and special damages, to an extent and in an amount to be proven at trial. In addition, Plaintiffs has incurred, and will continue to incur, attorney's fees, costs and expenses, including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

## FOURTH CLAIM FOR RELIEF

### FALSE IMPRISONMENT

(By Plaintiffs, Faun O'Neel, B.T., A.O., D.O., and A.T, against Defendants, CATANIO, WRIGHT, HEICHLINGER, AUSTIN, HUSAR, DOE CITY DEFENDANTS, DOE COUNTY DEFENDANTS, and DOES 1 through 10, inclusive)

86.     Plaintiffs incorporate by reference all of the preceding paragraphs as if the same were fully set forth herein.

87.     On December 22, 2020, Defendants, CATANIO, WRIGHT, HEICHLINGER, AUSTIN, HUSAR, DOE CITY DEFENDANTS, DOE COUNTY DEFENDANTS, and DOES 1 through 10, inclusive, as well as CITY and COUNTY by virtue of the vicarious liability principles of respondeat superior, intentionally deprived Plaintiffs, B.T., A.O., D.O., and A.T. of the freedom of movement through seizure, transportation, and detention and/or

conspired with and agreed with one another to commit the same, such that all said defendants are responsible for the resulting harm.

88.    None of the Plaintiffs, including the mother of B.T., A.O., D.O., and A.T., consented to the seizure, transportation, and detention of the minor children.

89.    Defendants, and each of them, did not have judicial authorization to seize and detain the minor children. Further, the seizure of each of the children was not supported by exigent circumstances.

90.    As a direct and proximate result of these Defendants' misconduct, these Plaintiffs have suffered, and will continue to suffer, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish, among other things.

91.    Defendants, CATANIO, WRIGHT, HEICHLINGER, AUSTIN, HUSAR, DOE CITY DEFENDANTS, DOE COUNTY DEFENDANTS, and DOES 1-10, and each of them, acted with malice and with the intent to cause injury to Plaintiffs, or acted with a willful and conscious disregard of the rights of Plaintiffs in a despicable, vile, and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing said Defendants and to deter them and others from such conduct in the future.

92.    Defendants, CITY and COUNTY, are vicariously responsible for the conduct of their respective agents and employees, including, but not limited to, CATANIO, WRIGHT, HEICHLINGER, AUSTIN, HUSAR, DOE CITY DEFENDANTS, DOE COUNTY DEFENDANTS, and DOES 1-10, pursuant to California Government Code Section 815.2 and other applicable statutory and case law.

## FIFTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(By Plaintiffs, Faun O'Neel, B.T., A.O., D.O., and A.T, against Defendants, CATANIO, WRIGHT, HEICHLINGER, AUSTIN, HUSAR, DOE CITY DEFENDANTS, DOE COUNTY DEFENDANTS, and DOES 1 through 10, inclusive)

93.     Plaintiffs incorporate by reference all of the preceding paragraphs as if the same were fully set forth herein.

94.     On December 22, 2020, Defendants, CATANIO, WRIGHT, HEICHLINGER, AUSTIN, HUSAR, DOE CITY DEFENDANTS, DOE COUNTY DEFENDANTS, and DOES 1 through 10, inclusive, as well as CITY and COUNTY by virtue of the vicarious liability principles of respondeat superior, intentionally seized, transported, and detained, B.T., A.O., D.O., and A.T. from the custody of their mother, Faun O'Neel, without consent, or aided and abetted, or conspired, or allowed the same to be committed by the other Defendants.

95.     In doing so, each Defendant intentionally caused or acted with reckless disregard of the possibility of severe emotional distress to Plaintiffs. Each of the Defendants abused their position of authority over Plaintiffs that gave them real or apparent power to affect Plaintiffs' interests, in causing Plaintiffs extreme emotional distress.

96.     Defendants' actions were without privilege, unconsented, and outrageous. No reasonable person would regard Defendants' conduct as tolerable in a civilized community.

97.      As a direct and proximate result of these Defendants' misconduct, these Plaintiffs have suffered, and will continue to suffer, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish, among other things.

98.     Each of the Defendants' conduct was a substantial factor in causing Plaintiffs' severe emotional distress.

COMPLAINT FOR CIVIL RIGHTS VIOLATION

99.    Defendants, CATANIO, WRIGHT, DOE CITY DEFENDANTS, DOE COUNTY DEFENDANTS, and DOES 1-10, and each of them, acted with malice and with the intent to cause injury to Plaintiffs, or acted with a willful and conscious disregard of the rights of Plaintiffs in a despicable, vile, and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing said Defendants and to deter them and others from such conduct in the future.

100.    Defendants, CITY and COUNTY, are vicariously responsible for the conduct of their respective agents and employees, including, but not limited to, CATANIO, WRIGHT, HEICHLINGER, AUSTIN, HUSAR, DOE CITY DEFENDANTS, DOE COUNTY DEFENDANTS, and DOES 1-10, pursuant to California Government Code Section 815.2 and other applicable statutory and case law.

## JURY TRIAL DEMAND

101.    Plaintiff demands a jury trial on each Claim for Relief set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

102.    General damages and special damages according to proof;

103.    As against the individual defendants, punitive damages as allowed by law;

104.    Attorney's fees and costs pursuant to 42 U.S.C. § 1988, and any other appropriate statute;

105.    Injunctive relief, both preliminary and permanent, as allowed by law,

106.    Costs of suit incurred herein; and

107.    Such further relief as the Court deems just and proper.

1

2     Dated: 12/24/2021

3                                              By:    /s/Robert R. Powell
                                                    ROBERT R. POWELL
4                                                   Attorney for Plaintiffs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR CIVIL RIGHTS VIOLATION